# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| HONGMEI LI,<br><br>PLAINTIFF,<br><br>– against –<br><br>CUSHMAN & WAKEFIELD, INC. AND PETER VICTOR,<br><br>DEFENDANTS. | SUMMONS<br><br>Index No.<br><br>The basis of venue is Plaintiff's place of work |

SIRS/MADAMS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer on the undersigned attorneys for plaintiff, Sanford Heisler Kimpel, LLP at 1350 Avenue of the Americas, 31st Floor, New York, NY 10019 within twenty (20) days after the service of this Summons and Complaint, exclusive of the day of service, or within thirty (30) days after the service is complete, if this Summons is not personally delivered to you within the State of New York. In the case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint, together with the costs of this action.

Dated: March 3, 2016
New York, NY

Yours, etc.,

*[signature]*

Jeremy Heisler (NY Bar No. 1653484)
**SANFORD HEISLER KIMPEL, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650

        Facsimile:  (646) 402-5651
        jheisler@sanfordheisler.com

        David Sanford (DC Bar No. 457933)
        **SANFORD HEISLER KIMPEL, LLP**
        1666 Connecticut Avenue NW, Ste. 300
        Washington, DC 20009
        Telephone: (202) 499-5200
        Facsimile:  (202) 499-5199
        dsanford@sanfordheisler.com

        ***Attorneys for Plaintiff Hongmei (Janice) Li***

TO: **Cushman & Wakefield, Inc.**
     1290 Avenue of the Americas
     New York, NY 10104-6178

     **Peter Victor**
     c/o Cushman & Wakefield, Inc.
     43-45 Portman Square
     London
     W1H 6LY
     United Kingdom

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

|  |  |
|---|---|
| HONGMEI LI, <br><br> *Plaintiff*, <br><br> v. <br><br> CUSHMAN & WAKEFIELD, INC. AND PETER VICTOR <br><br> *Defendants*. | COMPLAINT <br><br> JURY TRIAL DEMANDED <br><br> Index No. |

Plaintiff Hongmei (Janice) Li ("Ms. Li" or "Plaintiff"), by and through her attorneys, Sanford Heisler Kimpel, LLP, brings this action against Defendants Cushman & Wakefield, Inc. ("Defendant," "C&W," or "the Company") and Peter Victor and alleges as follows with knowledge as to her own actions and upon information and belief as to all other matters:

**I.      NATURE OF THE ACTION**

1.      Plaintiff Hongmei (Janice) Li is a 47-year-old woman of Chinese national origin who worked as a Director for the International Desk ("iDesk") at the New York City offices of Defendant Cushman & Wakefield, Inc., the largest private real estate services company in the world.

2.      In recent years, C&W has become infamous for discriminating in employment against women, older people, and minorities. Unfortunately, Ms. Li now finds herself to be one more victim of the Company's discriminatory practices.

3. With more than ten years of cross-border transaction experience, Ms. Li produced superior results for C&W after she was recruited by former Senior Managing Director of iDesk Asia Pacific ("APAC"), Kaustuv Roy, to become an Associate Director for Cushman & Wakefield's iDesk APAC in 2012. Because of those superior results, Roy promoted Ms. Li to Director of iDesk APAC in May 2015.

4. In light of Ms. Li's stellar work and extensive experience, colleagues and brokers saw her as the natural successor to manage iDesk APAC business from the Eastern U.S. when Mr. Roy moved on from his position in September 2015. Ms. Li had been working closely with Roy on cross-border transactions between the United States and iDesk APAC for over three years and had taken on a significant amount of responsibility in her role.

5. Instead, even though Ms. Li had given almost three and a half years of dedicated and exceptional service to C&W's iDesk, in December 2015, C&W informed Ms. Li that she was "too senior" and that she was being terminated, although not for performance reasons. Meanwhile, the Company retained Sam King—a younger, white, English male employee with less knowledge, tenure, and relevant experience—to oversee a significant portion of iDesk APAC business, the area on which Ms. Li focused and possessed expertise.

6. C&W's pretextual termination of Ms. Li was the culmination of a pattern of discriminatory conduct by the Company. In the months leading up to her termination, C&W discriminatorily stripped Ms. Li of her responsibilities and deliberately obstructed her ability to conduct business. By contrast, King, the young and favored white male, was spared this treatment; King was increasingly given accounts that Ms. Li and Mr. Roy had developed. Additionally, during her time at the Company, Ms. Li was subjected to prejudiced comments and behaviors on the basis of her Chinese national origin, including being made fun of for her accent.

Because Ms. Li is a Chinese woman, relatively short-statured and slim, her male colleagues and supervisors believed she could be bullied and intimidated. As alleged below, Ms. Li's unhappy experience as a Chinese national working for Cushman & Wakefield is no outlier. C&W has a history of discriminating against employees of Chinese origin, and often prefers white candidates over more experienced and talented Chinese employees.

7. Employment discriminators almost never bare their breasts to confess their sins. C&W is no exception. The Company came armed with an "explanation" to justify Ms. Li's termination—one designed to cover up its discriminatory intent. Ms. Li was told that her position was being "eliminated" because of a "reorganization" after C&W's completion of a merger with real estate giant DTZ.

8. Yet the facts are plain: after the merger, Ms. Li, an older woman of Chinese national origin, was first downgraded and then terminated, while Sam King, a younger white male, was elevated and given many of Ms. Li's responsibilities, even though he had much less experience in iDesk APAC transactions and was less tenured at the Company than Ms. Li.

9. Given that Ms. Li was a 47-year-old Chinese woman at a company that has a history of favoring young white males over women, older people, and minorities, the facts above establish that Ms. Li's termination was not due to the Company's "reorganization," but was instead the result of blatant discrimination.

10. Ms. Li brings this action because Defendant C&W's conduct constitutes unlawful discrimination and unlawful termination based on Ms. Li's gender, age, and national origin. Defendants have thereby violated the New York City Human Rights Law, Administrative Code of the City of New York City § 8-101 *et seq*. ("NYCHRL").

11. Ms. Li seeks back and front pay; compensatory and punitive damages; attorneys' fees, costs and expenses; pre- and post-judgment interest; and other appropriate damages pursuant to the NYCHRL.

## II. JURISDICTION AND VENUE

12. This Court has personal jurisdiction over the Defendants under CPLR §§ 301 and 302. Defendant C&W is situated in New York State, and committed in this state the wrongful acts about which Plaintiff complains.

13. Venue belongs in New York County. Defendant Cushman & Wakefield, Inc.'s regional office for the Americas is located in New York County; Plaintiff Li worked in that county, and upon information and belief, many of both Defendants' wrongful acts and omissions were committed in this County.

## III. PARTIES

### A. The Plaintiff

14. Plaintiff Hongmei (Janice) Li is a 47-year-old female resident of Stamford, Connecticut. Ms. Li is of Chinese national origin.

15. Ms. Li worked in New York at C&W's International Desk ("iDesk") Asia Pacific ("APAC") from July 2012 until December 2015. Initially she worked as an Associate Director, and then from May 2015 until December 2015 as a Director.

### B. The Defendants

16. Defendant Cushman & Wakefield, Inc. is a global real estate company whose regional headquarters (Americas) is located in New York City. At all times relevant to this action, Defendant C&W has maintained offices in New York City. Defendant C&W is an employer within the meaning of the NYCHRL.

17. Defendant Peter Victor is Senior Managing Director and Head of C&W's iDesk. Victor is a white male and resides in the United Kingdom.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Background and Employment History

18. C&W recruited Ms. Li in July 2012 to work as an Associate Director at the C&W iDesk APAC. Kaustuv Roy, former Senior Managing Director and Head of iDesk APAC, chose Ms. Li for the position. In May 2015, she was promoted to a Director-level position.

19. U.S. corporations often have global office portfolios in Asia Pacific. C&W acted as a broker by providing corporate real estate services to corporations. China is one of the major markets for the business, and Ms. Li speaks Chinese. Ms. Li's knowledge of the APAC leasing market and her relationships with local clients and brokers were invaluable in helping her source and facilitate cross-border business for C&W. Yet, barely six months after promoting her to Director, C&W fired Ms. Li. She worked for the Company until the end of December 2015, after she was unlawfully terminated by her manager of only three months, Defendant Peter Victor, a white male.

20. Plaintiff Li came to C&W with multiple years of experience in commercial real estate, investment banking, and equity capital markets for cross-border transactions between Asia and the United States. Before joining C&W, Ms. Li worked as Director of Transaction Service at Grubb & Ellis, Director of Investment Banking at Chatsworth Securities, LLC, and Director of Asia/US Equity Capital Markets at Maxim Group. Additionally, she worked as a reporter for the Ningbo Daily News in Zhejiang, China.

21. Ms. Li has a Bachelor of Arts in Journalism from Zhejiang University and a Master in Public Management from Carnegie Mellon University. She is fluent in both English

and Mandarin Chinese. In May 2007, she was awarded the "Rising Star" award from Real Estate Weekly.

### B. After a Merger between Real Estate Giants C&W and DTZ, Plaintiff Li's Role and Responsibilities Were Unfairly Reduced While Sam King, a Younger White Male With Less Relevant Experience, Was Elevated

22. On September 2, 2015, New York-based commercial real estate giant Cushman & Wakefield consummated its $2 billion merger with Chicago-based DTZ, creating a global real estate services behemoth operating in more than 60 countries around the world. The "new Cushman & Wakefield" boasts "a combined total of $5 billion in revenue, 43,000 employees, more than 4.3 billion square feet under management, and $191 billion in transaction value."[1]

23. In that same month, C&W's iDesk—which had previously been broken up into two separate teams, one focusing on APAC and one focusing on Europe, the Middle East, and Africa ("EMEA")—merged into one team. Peter Victor, who had previously headed iDesk EMEA, became Senior Managing Director and Head of the consolidated C&W iDesk.

24. In a September 8, 2015 email to the iDesk team, Victor outlined his vision for C&W's new iDesk. Victor explained that Michael Baker, a white male who had previously worked for DTZ's iDesk EMEA, would head C&W's iDesk EMEA. Strangely, Victor did not officially designate anyone to manage iDesk APAC, although Ms. Li would have been the obvious choice based on her skills, experience, and tenure at the Company. Instead, in the months after the merger, existing accounts from iDesk APAC were increasingly given to Sam King while Ms. Li saw a downgrade in her responsibilities and duties.

25. King, a white male younger than Ms. Li, is a British national. He had little previous experience working with iDesk APAC and had worked with Defendant Peter Victor on

---

[1] *See*, http://www.cushmanwakefield.com/en/news/2015/09/merger-announcement/

C&W's iDesk EMEA team for less than two years. In comparison, Ms. Li had worked at the Company's iDesk APAC for over three years, is fluent in Chinese, one of the major local languages required to conduct business in the region, and has extensive knowledge of Asian industry rules and terms. Even though King had none of these attributes, C&W privileged him over Plaintiff Li.

26. Notwithstanding that Plaintiff Li independently managed cross-border iDesk APAC transactions and engaged in business development throughout her tenure at the Company, under Victor's new management, she was placed in a support role to Mr. King. Ms. Li was told that her labor on her existing accounts would no longer count as part of her work, while King was allowed to continue working on his existing accounts. Ultimately, Victor downgraded Ms. Li's role without cause or explanation, despite her pleas to be allowed to maintain the same level of responsibility and continue working with her clients and accounts.

### C. Defendant Victor King's Pretext for Downgrading Ms. Li

27. Victor claimed that after the DTZ merger there would no longer be a territorial focus and everyone on the iDesk team would act as a "generalist" and conduct business globally. But this was untrue in practice and a pretext that Victor used to justify the demotion and eventual termination of Ms. Li and to elevate a less-qualified, younger, white male, Sam King. Like Ms. Li, King had previously been acting as a "specialist" conducting business with a region in EMEA. By framing Ms. Li's background and knowledge as shortcomings, Victor believed he could pretextually justify his elevation of King, who had little iDesk APAC experience and whose iDesk EMEA role became redundant after the merger. Victor sacrificed Ms. Li to save the position of the less experienced and less able Sam King.

**D. After Demoting Plaintiff Li, Victor Attempted to Set Her Up for Failure by Unfairly Subjecting Her to Confusion about the Scope of Her Role and by Hindering her Ability to Conduct Business**

28.  In the months leading up to her termination, from September to December 2015, Victor unfairly altered Ms. Li's already reduced job duties and job scope several times, causing her confusion, anxiety, and significant pressure.

29.  For example, while in October 2015 Victor instructed Ms. Li to develop new business in addition to supporting white, male, Englishman Sam King in existing transactions, Victor simultaneously blocked Ms. Li from resources that would allow her to do her job. Victor told Plaintiff Li that she could only meet with brokers for case specific information, not to source business leads, and that all contact between her and the brokers needed to be approved by King. Ms. Li was thus forced to source leads outside of the established business route. Additionally, while King was handed a budget to travel to other offices to attend meetings with industrial professionals and internal brokers, Ms. Li was no longer given these resources. Plaintiff Li had not previously been subjected to such restrictions during her time at the Company. C&W and Victor made these radical changes without justification or explanation.

30.  Victor continued his cat and mouse game. In November 2015, he changed Ms. Li's role once again. Victor informed Ms. Li that he needed to re-position her to work solely on business development, meaning that she would be expected to develop even more business than was previously expected of her, even though Victor denied her access to necessary internal resources. Despite her repeated requests, Victor did not give Ms. Li information on which geographical area she should cover or whether she would receive a budget for necessary travel expenses.

31.     Additionally, Ms. Li was unfairly excluded from communications between iDesk leaders regarding important business matters. Although Victor had bi-weekly or weekly scheduled calls with Mr. King, he did not respond to Ms. Li when she requested that she and Victor also have regular check-in calls.

32.     The intent was malicious: to lead Ms. Li toward failure. Although she saw the writing on the wall, Ms. Li did her best to succeed in this discriminatory environment. Ms. Li followed all of Victor's instructions and continued to put extraordinary energy and time into her work. Because of the lack of internal resources from the Company, Ms. Li relied on her network and cold calling to bring in new business. Ms. Li obtained leads and meetings in Europe, South America, and New York and reported her work to Victor, though he neither responded nor gave her feedback. For example, Ms. Li set up a meeting to introduce a multi-billion Chinese fund to the Company's New York brokerage team, a meeting which took place two days after C&W told her she was being terminated.

33.     Ms. Li quickly understood that she was being set up to be dismissed. Because of this, she suffered anxiety, sleeplessness, and loss of appetite, but she did not give up, and did her absolute best to survive at the Company.

34.     In short, once Defendant Victor was appointed to his new position in September 2015, Ms. Li faced a "heads I win, tails you lose," scenario. Ms. Li was denied the adequate resources to prove her ability to take on a "generalist" role and to bring in business from across the world, even though she tried to do so within the confines of Victor's discriminatory arrangement. Ms. Li was not recognized for her efforts while other iDesk employees—King in particular—were given greater resources and designated as "generalists," all of which ignored that, like Ms. Li, they had previously worked in "specialist" roles with territorial focuses.

### E.   C&W Unlawfully Terminated Plaintiff Li

35.   In late November 2015 Ms. Li received a call invite from Victor scheduling a "catch up call" for early December. When Ms. Li called him on that day, Victor told her to go to the HR office. Ms. Li went to HR and, in a conference call with Victor and HR Managing Director Joan Hynes, was told that her position was being eliminated and she was being terminated. Upon information and belief, Ms. Li was the only person on iDesk terminated at that time. King, whose experience became superfluous and duplicative of Mr. Baker's after the merger, did not see his position eliminated.

36.   During her exit interview, Ms. Hynes told Ms. Li that she was not being terminated for performance issues. Additionally, Victor told Ms. Li that she was "too senior" and that he planned to hire someone for a more "junior role" who would be a "generalist" conducting business development. Victor informed Ms. Li that he already had an intern as a candidate for that role.

37.   In a follow up email to Victor, Ms. Li expressed interest in continuing in the junior role and said she was willing to take a salary cut. Victor responded by stating that the role had not been finalized and that he therefore could not begin accepting applications. Victor confirmed in his email to Ms. Li that iDesk intended to create a junior position to assist with business development.

38.   Not only did C&W discriminatorily dismiss Ms. Li, but, they offered her a severance package that, upon information and belief, is significantly lower than the amount the Company typically provides.

39.   C&W's decision to abruptly terminate Ms. Li from her position has not only inflicted additional dignitary harm but also has significantly limited Ms. Li's ability to seek new

employment. Because of Ms. Li's age and sudden termination from her position at C&W, her ability to find comparable employment is severely inhibited.

### F. C&W's Culture Tolerates Hostility toward Chinese Nationals, Which Negatively Affected Plaintiff Li Throughout her Tenure at the Company

40. During her time at C&W, Plaintiff Li often felt discriminated against and faced hostility from C&W and her co-workers because of her Chinese origin.

41. After a July 2015 internal conference call with a team of San Francisco brokers regarding a Chinese client, which Ms. Li participated in, Ms. Li overhead C&W broker Jennie Karnes laugh and comment to another broker that she could not understand what Ms. Li was saying and question what kind of "translator" they were using. Ms. Li then wrote an email to Ms. Karnes, informing her that she was not a translator. This incident is indicative of a culture at C&W that tolerates hostility toward Chinese nationals. This event subsequently made Ms. Li afraid to speak up during conference calls and caused her significant anxiety when speaking on the phone.

42. Additionally, after the DTZ merger, Sam King showed Plaintiff Li emails in which iDesk team members discussed how U.S. clients should meet with U.S. brokers in China, rather than local Asian brokers. The reason, King told Ms. Li, was that the clients would be more entertained by U.S. brokers because they would take them to bars, something local Asian brokers purportedly would not do. Ms. Li was excluded from these email communications, emphasizing the racist nature of the conversations and the Company's attempt to hide its bigoted personnel practices.

43. There were other instances of national origin and gender discrimination that C&W directed against Ms. Li. Ms. Li sourced and facilitated an important roundtable real estate event organized by China International Finance (CIF). Bruce Mosler, a white, high ranking

11

C&W executive promised to pay $10,000 to CIF to host the event, but he later reneged and avoided paying in full, even after he hosted and spoke at the event, leaving Ms. Li embarrassed and suffering a loss of business friendships.

44. Ultimately, Plaintiff Li did not complain about these events while she was working at the Company because her income is an important resource for her family and she was terrified of losing her job. Based on her experience and conversations with other Chinese colleagues at the Company, Ms. Li was acutely aware that the Company often condones and tolerates this type of discriminatory behavior. There have been numerous instances of Chinese nationals in China working under the Company's Western management team bringing claims of wrongful termination. Ms. Li feared retaliation if she complained and hoped that her excellent performance would protect her from losing her job, despite the Company's discriminatory practices.

45. Ms. Li's commitment and significant contribution to C&W's success is indisputable. The Company's decision to first reduce Ms. Li's responsibilities and then pretextually terminate her but retain a younger, white, British male employee with less tenure and less experience, along with Victor's stated intention to hire a junior candidate with substantially less relevant knowledge and experience, are blatantly discriminatory.

### COUNT I
### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW
*UNLAWFUL DISCHARGE ON THE BASIS OF NATIONAL ORIGIN*
### New York City Administrative Code § 8-107
### (Plaintiff Against All Defendants)

46. Plaintiff re-alleges and incorporates by reference all allegations set forth in this Complaint as though fully stated herein.

47.     Defendants discriminated against Ms. Li on the basis of her national origin, in violation of New York City Administrative Code § 8-107 by discharging her from employment because of her national origin.

48.     Plaintiff is a Chinese national.

49.     Defendant Victor had the power to hire, fire, and alter the terms and conditions of Plaintiff's employment.

50.     Defendant Victor participated in conduct giving rise to the unlawful discharge based on Plaintiff's national origin.

51.     Defendant Victor aided, abetted, incited, compelled and/or coerced the unlawful discharge based on Plaintiff's national origin by directly and purposefully participating in conduct giving rise to the unlawful discharge.

52.     Defendants' discrimination altered Ms. Li's conditions of employment by creating a stressful and abusive working environment for her.

53.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost future employment opportunities, other financial losses, emotional distress, and other non-economic damages.

54.     Because of Defendants' aforementioned unlawful conduct, Plaintiff is entitled to all damages available for violations of the New York City Human Rights Law, including lost compensation, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

**COUNT II**
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW**
*UNLAWFUL DISCHARGE ON THE BASIS OF AGE*
**New York City Administrative Code § 8-107**
**(Plaintiff against All Defendants)**

55. Plaintiff re-alleges and incorporates by reference all allegations set forth in this Complaint as though fully stated herein.

56. Defendants discriminated against Plaintiff in violation of the New York City Human Rights Law by discharging her from employment because of her age.

57. Plaintiff is forty-seven (47) years old.

58. Defendant Victor had the power to hire, fire, and alter the terms and conditions of Plaintiff's employment.

59. Defendant Victor participated in conduct giving rise to the unlawful discharge based on Plaintiff's age.

60. Defendant Victor aided, abetted, incited, compelled and/or coerced the unlawful discharge based on Plaintiff's age by directly and purposefully participating in conduct giving rise to the unlawful discharge.

61. Defendants' discrimination altered Ms. Li's conditions of employment by creating a stressful and abusive working environment for her.

62. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost future employment opportunities, other financial losses, emotional distress, and other non-economic damages.

63. Because of Defendants' aforementioned unlawful conduct, Plaintiff is entitled to all damages available for violations of the New York City Human Rights Law, including lost compensation, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT III
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW**
*UNLAWFUL DISCHARGE ON THE BASIS OF GENDER*

### New York City Administrative Code § 8-107
### (Plaintiff Against all Defendants)

64. Plaintiff re-alleges and incorporates by reference all allegations set forth in this Complaint as though fully stated herein.

65. Defendants discriminated against Ms. Li on the basis of her gender, in violation of New York City Administrative Code § 8-107 by discharging her from employment because of her gender.

66. Defendant Victor had the power to hire, fire, and alter the terms and conditions of Plaintiff's employment.

67. Defendant Victor participated in conduct giving rise to the unlawful discharge based on Plaintiff's gender.

68. Defendant Victor aided, abetted, incited, compelled and/or coerced the unlawful discharge based on Plaintiff's gender by directly and purposefully participating in conduct giving rise to the unlawful discharge.

69. Defendants' discrimination altered Ms. Li's conditions of employment by creating a stressful and abusive working environment for her.

70. As a direct result of Defendants' aforementioned unlawful conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, other financial losses, emotional distress, reputational harm, humiliation, and other non-economic damages.

71. Because of Defendants' aforementioned unlawful conduct, Plaintiff is entitled to all damages available under New York City Administrative Code § 8-107, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Li prays that this Court:

a. Award Plaintiff all available damages, including back pay, front pay, compensatory and emotional distress damages, and punitive damages, in an amount in excess of $4 million;

b. Award Plaintiff all attorneys' fees, costs, and expenses available under law; and

c. Award Plaintiff all pre-judgment interest and post-judgment interest available under law.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable of right by jury.

Dated: March 3, 2016

SANFORD HEISLER KIMPEL, LLP

_____
Jeremy Heisler (NY Bar No. 1653484)
SANFORD HEISLER KIMPEL, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
jheisler@sanfordheisler.com

David Sanford (DC Bar No. 457933)
SANFORD HEISLER KIMPEL, LLP
1666 Connecticut Avenue NW, Ste. 300
Washington, DC 20009
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
dsanford@sanfordheisler.com

*Attorneys for Plaintiff Hongmei (Janice) Li*

16