UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                   :        16cv2484 (DLC)

HONGMEI LI,                       :

               Plaintiff,       :        <u>OPINION AND ORDER</u>

                                     :

         -v-                       :

                                     :

CUSHMAN & WAKEFIELD, INC. and PETER   :

VICTOR,                           :

              Defendants.      :

                                     :

-------------------------------------- X

DENISE COTE, District Judge:

APPEARANCES

For the plaintiff:
Jeremy Heisler
Inayat Ali Hemani
Sanford Heisler, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019

For the defendants:
Thomas M. Wilde
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601

Ashley B. Huddleston
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, NY 10019

DENISE COTE, District Judge:

This is an employment discrimination action by plaintiff

Hongmei "Janice" Li ("Li") against her former employer, Cushman

& Wakefield, Inc. ("C&W") and her former supervisor at C&W,

Peter Victor ("Victor").  Li alleges that C&W and Victor demoted

and then discharged her improperly on the basis of her national origin, age, and gender.  She sues under the New York State Human Rights Law, as codified at N.Y. Executive Law § 296 et seq. ("NYSHRL"), and the New York City Human Rights Law, as codified in the Administrative Code of the City of New York § 8-107 et seq. ("NYCHRL").  The defendants move for summary judgment.  For the reasons that follow, the motion is granted in part.

## Background

The following describes the evidence which is either undisputed or taken in the light most favorable to the plaintiff.  C&W is a global real estate services firm with over 250 offices worldwide.  C&W provides services including commercial leasing and valuation.  The International Desk ("iDesk") is a group within C&W that develops and facilitates cross-border transactions and connects brokers and clients from different regions of the world.  In July 2012, Li was hired to work at C&W as an Associate Director on the iDesk.  Li is a woman of Chinese national origin and was 43 years old at the time she was hired.

Li received two performance reviews in 2013 and 2014 from her C&W supervisor Kaustuv Roy ("Roy").  They were largely positive, although they noted some difficulties, including a need to improve written English skills.  In March 2015, Roy

recommended that Li be promoted from Associate Director to Director.  On April 1, 2015, C&W promoted plaintiff, then age 47, to Director and raised her base salary.

During her time at C&W, Li describes two incidents which she believes demonstrate discrimination based on national origin.  In June of 2013, a Chairman of Global Brokerage at C&W (the "Chairman") told Li that he would pay $10,000 to sponsor an event with a Chinese finance organization.  After the event, he attempted to renege on his promise to pay.  Li alleges that after the Chinese finance organization sent an email about the bill, the Chairman angrily said to her: "This Chinese group, I [have] never see[n] people like money so much."

In July of 2015, Li was on a conference call with C&W's San Francisco office to help them prepare for a call with a Chinese client.  At the end of the call, she heard a female broker in the San Francisco office (the "Broker") laugh and say to another broker something to the effect of: "What kind of translator did you find?  I can't understand what she is talking about."  Li emailed the Broker and the others on the conference call, summarizing the comments, and asking the Broker to inform Li if she could not understand her rather than making comments to others.  The Broker wrote back to apologize to Li and the team.

In May 2015, C&W and DTZ, another commercial real estate firm, announced plans to merge.  DTZ had its own, smaller, iDesk

function with three employees reporting into another department:[1] Michael Baker, who was based in London, Alan Brass, and Peter Stanford.  The DTZ iDesk employees are younger than Li and none are of Chinese national origin.

As of the date the merger was announced, C&W's iDesk contained two regional groups working in tandem.  It had two supervisors, each of whom supervised one other iDesk employee.  Victor lead the Europe, Middle East, and Africa ("EMEA") group from the London office.  Victor supervised Sam King ("King"), who was hired in March 2014 as a Director of the EMEA iDesk team.[2]  King is a Caucasian male who is younger than King.  King spent his first six months in the London office before moving to the New York office and assuming a Managing Director role.  Roy led the Asia-Pacific ("APAC") group from the New York office.  Roy supervised Li.

The C&W and DTZ merger was completed on September 2, 2015, and the C&W and DTZ iDesks were reorganized to form one group of four employees.  Victor became the global lead for the iDesk team to whom the other three employees would report.  Michael Baker led the EMEA team from London.  The U.S. market was split

---

[1] These three employees reported to Quentin Knights, who was head of Global Occupier Services ("GOS") at DTZ.

[2] Pardeep Bhakar, an iDesk manager, also reported to Victor. After the merger he reported to Baker.  His position analyzes, manages, and tracks data across iDesk.

into east and west teams.  Prerana Daga ("Daga") was hired in May or June of 2015 as an Executive Director and led the west team from C&W's San Franscio office.  Daga is younger than Li and of Indian national origin.  King led the east team.  Li was initially placed in a support role to Daga and King, but her position was terminated in December.  Comparing the pre- and post-merger C&W and DTZ iDesk teams, seven employees were reduced to four in number.  Roy's supervisory position was eliminated and three supervisee positions were eliminated: those of Stanford and Brass, who had been at the iDesk at DTZ, and Li's position.  Daga was hired.

On December 1, 2015, Li was notified of her discharge. According to Li, Victor said that they were looking to create a more junior role to support King in New York, and to hire someone who was a generalist instead of a specialist.  Plaintiff expressed interest in the junior position and said she was willing to take a pay cut.  The position was never filled.  On December 31, 2015, Li's employment at C&W ended.

On March 3, 2016, Li filed a complaint against Victor and C&W in the Supreme Court of the State of New York.  On April 4, the defendants removed the case to federal court on the basis of diversity jurisdiction.  On June 27, Li filed the first amended complaint.  Li alleges that the defendants demoted her by putting her in a support role and ultimately discharged her

5

because of her national origin, age, and gender, in violation of the NYCHRL and the NYSHRL.  C&W filed the instant motion for summary judgment on January 20, 2017.  The motion became fully submitted on February 24.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015).  If the moving party makes this initial showing, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  El-Nahal v. Yassky, 835 F.3d 248, 252, 256 (2d Cir. 2016).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the party opposing

summary judgment may not merely rest on the allegations or
denials of his pleading; rather his response, by affidavits or
otherwise as provided in [Rule 56], must set forth specific
facts demonstrating that there is a genuine issue for trial."
Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation
omitted). "[C]onclusory statements, conjecture, and
inadmissible evidence are insufficient to defeat summary
judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317
(2d Cir. 2011) (citation omitted), as is "mere speculation or
conjecture as to the true nature of the facts." Hicks v.
Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).
"An issue of fact is genuine and material if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." Cross Commerce Media, Inc. v. Collective,
Inc., 841 F.3d 155, 162 (2d Cir. 2016). The court must draw all
inferences and all ambiguities in a light most favorable to the
nonmoving party. Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161,
169 (2d Cir. 2006); United States v. Diebold, Inc., 369 U.S.
654, 655 (1962).

In cases involving claims of employment discrimination
there is a "need for caution about granting summary judgment to
an employer in a discrimination case where . . . the merits turn
on a dispute as to the employer's intent." Tolbert v. Smith,
790 F.3d 427, 434 (2d Cir. 2015) (citation omitted).

Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). Ultimately, the test for summary judgment "is whether the evidence can reasonably support a verdict in plaintiff's favor." James v. N.Y. Racing Ass'n, 233 F.3d 149, 157 (2d Cir. 2000).

NYSHRL claims are analyzed under the same burden shifting regime as their federal counterparts, consistent with the Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Tolbert, 790 F.3d at 434.[3] Under the McDonnell Douglas standard, a plaintiff bears the burden of establishing a prima facie case of discrimination by showing (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation. Doe v. Columbia Univ., 831 F.3d 46, 54 (2d Cir. 2016).

Once the prima facie case has been made, "the burden shifts

---

[3] Age discrimination claims brought pursuant to the NYSHRL are analyzed under the Age Discrimination Employment Act framework, and gender and national origin discrimination claims brought pursuant to the NYSHRL are analyzed under the Title VII framework. Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009) (age and gender discrimination); Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014) (national origin discrimination).

to the employer to give a legitimate, non-discriminatory reason

for its actions." Kirkland v. Cablevision Sys., 760 F.3d 223,

225 (2d Cir. 2014) (per curiam).  Once the employer presents

evidence of its justification for the adverse employment action,

the presumption of discrimination established by the prima facie

case "drops out of the picture" and the McDonnell Douglas

framework "is no longer relevant."  Doe, 831 F.3d at 54

(citation omitted).  At this stage, in the context of gender and

national origin discrimination claims, the plaintiff must point

to evidence sufficient to permit a rational factfinder to

conclude that the defendant's reason is merely a pretext or that

the defendant's action was based at least in part on

discrimination.  Kirkland, 760 F.3d at 225.  For disparate-

treatment discrimination claims based on age, the plaintiff must

prove that age was a "but-for" cause of the adverse employment

action, not just a contributing or motivating factor.  Delaney

v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014);

Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir.

2010).  In other words, the plaintiff must offer evidence that

the action would not have occurred without the employer's

consideration of the plaintiff's age.  Delaney, 766 F.3d at 169.

NYCHRL discrimination claims must be analyzed "separately

and independently from any federal and state law claims,

construing [the NYCHRL's] provisions broadly in favor of

discrimination plaintiffs to the extent that such a construction is reasonably possible." <u>Ya-Chen Chen v. City Univ. of New York</u>, 805 F.3d 59, 75 (2d Cir. 2015) (citation omitted). Thus, "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." <u>Velazco v. Columbus Citizens Found.</u>, 778 F.3d 409, 411 (2d Cir. 2015) (citation omitted).

Section 8-107 of the NYCHRL makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived age, . . . national origin, [or] gender of any person . . . [t]o refuse to hire or employ or to bar or to discharge from employment such person" or to "discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a).[4]

> Construing the phrase "discriminate against . . . in terms, conditions or privileges of employment" broadly, the First Department . . . declined to use the federal "severe and pervasive" standard for NYCHRL claims and instead adopted a rule by which liability is normally determined simply by the existence of

---

[4] "It is unclear whether, and to what extent, the McDonnell Douglas burden-shifting analysis has been modified for NYCHRL claims." <u>Mihalik v. Credit Agricole Cheuvreux N.A., Inc.</u>, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Nevertheless, the burden-shifting framework is frequently applied to NYCHRL claims. <u>See, e.g.</u>, <u>Hudson v. Merrill Lynch & Co.</u>, 31 N.Y.S.3d 3, 6-7 (App. Div. 1st Dep't 2016) (applying <u>McDonnell Douglas</u> burden-shifting framework to NYCHRL claim).

> differential treatment.  To establish a []
> discrimination claim under the NYCHRL, the plaintiff
> need only demonstrate by a preponderance of the
> evidence that she has been treated less well than
> other employees because of her [protected
> characteristic].

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted).  "The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination played no role in its actions." Id. at 110 n.8 (citation omitted).  "If the plaintiff responds with some evidence that at least one of the reasons proffered by the defendant is false, misleading, or incomplete, . . . such evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied." Bennett v. Health Mgt. Sys., Inc., 936 N.Y.S.2d 112, 124 (App. Div. 1st Dep't) 2011).  Still, "NYCHRL is not a general civility code" and a plaintiff still must "show that she has been treated less well because of her" protected characteristics. Mihalik, 715 F.3d at 110 (citation omitted).  In making this determination, a court must consider the totality of the circumstances because "the overall context in which the challenged conduct occurs cannot be ignored." Id. at 111 (citation omitted).

Li claims she was discriminated against on the basis of national origin, age, and gender in two ways: she was demoted and then fired.  The parties do not dispute that Li is a member of a protected class, that she was qualified for the position of Director at iDesk, or that her firing constitutes an adverse employment action.  With respect to the plaintiff's burden of showing prima facie evidence of discrimination, the parties dispute that she suffered an adverse employment action through a demotion and that she has offered evidence that creates an inference of discriminatory intent based on national origin, age, and gender.

### A. Adverse Employment Action: Demotion

Under the NYSHRL framework, "[a]n employee suffers an 'adverse employment action' if he endures a materially adverse change in the terms and conditions of employment.  An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."  Tolbert, 790 F.3d at 435 (citation omitted).  The more lenient standard of the NYCHRL requires only that the plaintiff "show that she has been treated less well" because of her protected characteristic.  Mihalik, 715 F.3d at 110 (citation omitted).

Li contends that she was able to work with more independence prior to the reorganization, that she was given less responsibility after the reorganization, and that she was

prohibited from contacting brokers directly after the reorganization.  It is undisputed that Li's salary, benefits, and job title did not change.

Li has not shown that the "demotion" she describes constituted an adverse employment action under the NYSHRL.  She has, however, presented sufficient evidence to find that an adverse employment action due to a demotion existed under the NYCHRL.  Therefore, summary judgment is granted to the defendants on the NYSHRL demotion claims.

## B. Discriminatory Intent

A plaintiff may either offer direct evidence of discriminatory intent, or may offer indirect evidence to raise an inference of discriminatory intent.  Direct evidence is typically in the form of remarks made about the plaintiff, or the protected class to which she belongs.  In determining whether a remark is probative of discrimination, courts consider four non-exhaustive factors:

> "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)."

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

Indirect evidence may be offered by showing that the

employer subjected the plaintiff to disparate treatment, that is, treated her less favorably than a similarly situated employee outside her protected group -- i.e., a "comparator." Raspardo v. Carlone, 770 F.3d 97, 126 (2d Cir. 2014). A plaintiff relying on a comparator to show disparate treatment must show that the comparator is "similarly situated in all material respects" to the plaintiff. Id. (citation omitted).

> [A]n inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

Leibowitz, 584 F.3d at 502 (citation omitted). In addition to discriminatory intent, a plaintiff must "demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct. Ordinary principles of causation apply to this inquiry into proximate cause." Back, 365 F.3d at 125 (citation omitted).

Li purports to offer direct evidence of discrimination on the basis of her national origin through the comments made by the Chairman and the Broker. These were isolated comments made by individuals who were not involved in the decision to demote

or fire Li, nor were the comments made in connection with those adverse employment actions.  Li has offered no evidence to show a connection between the alleged comments and the injury, and therefore they do not support Li's claim that the adverse employment actions were made on the basis of her national origin.  Li has, however, satisfied her minimal burden to raise an inference of discrimination on the basis of national origin by offering other evidence.  Before the reorganization, the iDesk groups at C&W and DTZ had only one Chinese employee: Li.  After the reorganization, Li lost her job.  Li has met her minimal burden to demonstrate a <u>prima facie</u> case of national origin discrimination.

Li has satisfied her burden to demonstrate a <u>prima facie</u> case on the basis of age as well.  Li, the oldest supervised employee at the iDesk at either C&W or DTZ, was fired in the reorganization.  Li has met her burden, which is minimal, to demonstrate a <u>prima facie</u> case of age discrimination.

Li offers no direct evidence of discriminatory comments based on gender.  Nor does she offer any indirect evidence of discrimination on this basis.  Before the reorganization, she was the only woman at iDesk, and she was fired.  But, after the reorganization, the same number of women worked at iDesk.  C&W hired Daga during the reorganization.  Therefore, Li has not presented evidence sufficient to make out a <u>prima facie</u> case of

15

gender discrimination.  The defendants are granted summary

judgment on each of Li's gender discrimination claims.

**C. Legitimate Non-discriminatory Reason**

Once the plaintiff has satisfied her burden to present

evidence of a prima facie case, the burden shifts to the

defendants to give a legitimate, non-discriminatory reason that

the plaintiff was demoted or fired.  Kirkland, 760 F.3d at 225.

A reduction in workforce and/or restructuring is a legitimate,

non-discriminatory reason.  Gallo v. Prudential Residential

Servs., Ltd., 22 F.3d 1219, 1226 (2d Cir. 1994).  But "[i]t is

axiomatic that even during a legitimate reorganization or

workforce reduction, an employer may not dismiss employees for

unlawful discriminatory reasons."  Leibowitz, 584 F.3d at 504

(citation omitted).

The defendants give several reasons for altering Li's job

responsibilities and soon thereafter firing Li that are

unrelated to her national origin or age.  They have offered

evidence that (1) the iDesk was moving to a generalist, rather

than specialist model, and that Li was a specialist; (2) Victor

was more familiar with King's work and more confident in his

abilities; and (3) there was insufficient work to justify two

positions at the iDesk in New York.  While the defendants have

articulated three non-discriminatory reasons, Li has presented

sufficient evidence to require a jury to determine whether the

defendants acted with discriminatory intent.

While C&W has provided evidence that Li was a specialist, there is evidence that King was also a specialist, and Li asserts that she was capable of becoming a generalist.  Second, while Victor and Li had not worked together and Victor had supervised King for 20 months, a preference for King over Li due to familiarity or confidence is insufficient to dispel an inference of discrimination through a motion for summary judgment.  Finally, a need to reduce the size of the New York workforce does not address why Li rather than King or another member of the team was fired.

## Conclusion

C&W's January 20, 2017 motion for summary judgment is granted as to Li's claims of gender discrimination under the NYSHRL and the NYCHRL, and as to Li's demotion claim under the NYSHRL.  The claims that remain for trial are (1) NYCHRL claims for demotion and firing based on national origin and age; and (2) NYSHRL claims for firing based on national origin and age.

Dated:   New York, New York
         May 3, 2017

_____
DENISE COTE
United States District Judge